UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:20-cr-00020-JLT |
| Plaintiff, | **ORDER ON MOTIONS IN LIMINE** |
| v. | **(Docs. 104, 105, 106)** |
| RAMONCHITO RACION, | |
| Defendants. | |

## I.  Background

Ramonchito Racion faces three felony charges set forth in the Superseding Indictment. (Doc. 66.) The first count charges him with attempted sexual abuse in violation of 18 U.S.C. § 2242(2)(B). (Doc. 66 at 1 ("on or about June 7, 2019 to June 11, 2019" defendant "knowingly attempted to engage in a sexual act with [victim] while [victim] was physically incapable of declining participation in . . . that sexual act").) The second count charges him with abusive sexual contact in violation of 18 U.S.C. § 2244(b). (*Id*. at 2 ("on or about June 7, 2019 to June 11, 2019" defendant "knowingly engaged in sexual contact with [victim] without [victim]'s permission").) The third count also charges him with abusive sexual contact in violation of § 2244(b) ("Count 3"). (*Id*. ("on or about April 1, 2019 to May 11, 2019" defendant "knowingly engaged in sexual contact with [victim] without [victim]'s permission").) Trial currently is set to commence on September 12, 2022. (*See* Doc. 102.)

///

Before the Court for decision are three motions in limine: one filed by the United States (Doc. 104) and two by Defendant (Docs. 105–106).

## II. Legal Standards Governing Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted).

Courts disfavor motions in limine seeking to exclude broad categories of evidence. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in trial]." *Sperberg,* 519 F.2d at 712. Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

Moreover, the rulings on the motions in limine made below do not preclude either party from raising the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible. In this event, the proponent of the evidence **SHALL** raise the issue outside the presence of the jury.

///

///

## II. ANALYSIS

### A. Defendant's Motion to Exclude "Other Acts" Evidence in the form of Defendants' Statements (Doc. 105)

Defendant moves pursuant to Federal Rules of Evidence 404(b), 403, and 413 for an order precluding the government and its witnesses from offering "other act" evidence allegedly committed by Defendant. (Doc. 105.) Specifically, Defendant requests that the Court preclude the government from offering as evidence one or more of his statements to law enforcement, in which Defendant indicated that he touched the genitals or committed oral sex without permission on complaining witness S.K. on the night of June 8, 2019, or early morning hours of June 9, 2019. (*Id.*) Defendant bases this request upon his contention that the complaining witness has "consistently asserted" the alleged assaults occurred on or about sunrise on the morning of June 8, 2019. (*Id*. at 1.) Defendant therefore asserts that any evidence of an assault on the night of June 8 or early morning of June 9 is "other acts" evidence subject to exclusion for various reasons. (*Id*.)

First, Defendant's motion relies on a factual premise that cannot be adopted at this time on this record. Put another way, Defendant's motion assumes that that Defendant's statements only concern conduct that definitively occurred on June 8 or the morning of June 9. But the actual record is more equivocal. S.K. indicated that after a night out on Friday June 7, 2019, sometime during the morning of June 8, 2019, Racion woke S.K. and performed nonconsensual oral sex on S.K. (*See* Doc. 59-2 at 4). Racion's account is that S.K. appeared to be sleeping when he performed nonconsensual oral sex on S.K. (Doc 108-2 at Bates 1251-56, 1268-72; Doc. 108-3 at Bates 1178-79, 1188-95, 1200-01.) Critically, Racion has given different timeframes for the events in question. (*See* Doc. 59-3 at Bates 168 ("It never happened on Saturday"); Doc. 59-3 at Bates 170 (stating, "Maybe – maybe I'm – I'm I was wrong with the date. You know."); Doc. 108-3 at Bates 1166-67 (describing the incident as occurring on the night of June 8/9)). Defendant and S.K. also provide differing accounts about the duration of the oral copulation and the specifics of the act. (*Compare id*. at 1270, 1252 with Government's Exhibit 1 at Bates 571.) However, there is nothing in the record that suggests that Defendant performed oral sex on S.K. more than once. (Doc 108-2 at Bates 1262.) All of this is consistent with the government's position that Defendant was discussing the charged conduct during his confession. Though Defendant

3

may suggest to the jury that his statements regarding any events that took place on the evening of June 8 or later concern an incident wholly separate from the charged conduct, that is not the only way to view the evidence. It is possible, for example, that the jury could conclude that all the evidence, including Defendant's own statements, concerns the night of June 7/morning of June 8, particularly because Defendant indicated in one of his statements that he might be "wrong with the date."[1] The government is not offering Defendant's statement to prove that he committed another offense; the evidence is being offered *as proof of the offense* itself. Rule 404(b) does not bar this use under the circumstances.

Finally, Defendant relies on a creative application of the "corpus delicti" doctrine to argue for exclusion of his statements to law enforcement. Very generally, "[w]hen the government seeks to rely on a defendant's confession or admission to meet its burden of proof, the corpus delicti doctrine provides that the government is required to provide corroborative evidence that the criminal conduct actually occurred and that the confession/admission was trustworthy." *United States v. Cerna*, No. CR 08-0730 WHA, 2011 WL 838897, at *14 (N.D. Cal. Mar. 3, 2011) (citing *United States v. Lopez–Alvarez*, 970 F.2d 583, 592 (9th Cir. 1992)); *see also United States v. Delgado*, 545 F.3d 1195, 1206 (9th Cir. 2008) ("Although a confession must be corroborated by independent evidence, the corroboration need not independently establish any element beyond a reasonable doubt, but must

---

[1] Defendant previously moved to dismiss the indictment for related, although not identical reasons, arguing that the five-day period of time charged in the indictment did not adequately apprise him of the alleged conduct. (*See* Doc. 81 at 2.) The Court's order denying Defendant's motion to dismiss summarized the relevant aspects of the record before denying the motion:

> Defendant argues that the complaint and all of the discovery produced to the defense to date indicate that the alleged conduct occurred during the early morning hours of June 8, which could reasonably encompass the late hours of June 7 as well, when it has been suggested the defendant and the victim returned to their residence after attending a concert. (Doc. Nos. 73 at 2; see also 56 at 3–4 (defendant's summary of the facts).) Moreover, as the government points out, the discovery in this case, including defendant's own statements, indicates that the incident leading to the charges alleged in Counts 1 and 2 may have occurred on another date but within the short time period alleged in both Counts 1 and 2. (*See* Doc. No. 59-3 (Defendant's Interview with Law Enforcement) at 7 ("Maybe – maybe I'm – I'm – I was wrong with the date. You know.").) For these reasons, the court concludes that the time periods alleged in Counts 1 and 2 of the Superseding Indictment provide defendant with adequate notice of the conduct with which he is charged. Accordingly, his motion to dismiss those counts of the Superseding Indictment will be denied.

(*Id.*)

merely fortify the truth of the confession."). However, "the corpus delicti doctrine operates as a rule about the reliability of uncorroborated confessions." *United States v. Connor*, No. 19-CR-58-JED, 2019 WL 6050722, at *12 (N.D. Okla. Nov. 15, 2019) (citing *United States v. Shunk*, 881 F.2d 917, 919–20 (10th Cir. 1989)). "It is not a rule about the admissibility of confessions." *Id*. As was the case in *Connor*, Defendant "fails to cite a single case where a court has relied on the corpus delicti rule to bar a defendant's confession at trial." *Id*. Therefore, to the extent Defendant is attempting here to exclude his confession entirely as uncorroborated, the corpus delicti doctrine does not support such a procedural maneuver. *See United States v. Neal*, Crim. No. 3:09CR17, 2009 WL 3112137, at *1 (W.D.N.C. Sept. 23, 2009) (declining to rule on a *corpus delicti*-based motion in limine because "to issue such a ruling at this point in time would deny the Government the opportunity to present its evidence, evidence which may well include corroboration"); *Cerna*, No. CR 08-0730 WHA, 2011 WL 838897, at *14 (N.D. Cal. Mar. 3, 2011)("Requiring the government to provide corroborative evidence before allowing it to introduce any confessions or admissions would pose an onerous and unnecessary burden given that most elements—if not all elements—of the crimes charged will not be solely based on a defendant's confession or admission. A better course of action is for defendants to bring corpus delicti motions when those motions are ripe after the presentation of evidence."); *United States v. Cerna*, CR 08-0730, 2011 WL 2119304, at *1 (N.D. Cal. May 27, 2011) ("It cannot be determined whether the *corpus delicti* rule has been violated until presentation of the evidence is complete.").

Because of the factual disputes discussed above, it is not possible to adopt the factual premise that appears to underpin Defendant's corpus delicti doctrine argument. In other words, if the jury adopts the government's interpretation of Defendant's confession (i.e., that Defendant was confessing to the same conduct described by S.K.), it is totally unclear how the corpus delicti doctrine would apply. For all these reasons, Defendant's motion is DENIED, except that Defendant may renew his corpus delicti argument in an appropriate motion at the appropriate time.

**B.     Defendant's Motion to Exclude the Testimony of Dr. Mindy Mechanic (Doc. 106)**

Defendant next moves to exclude the testimony of government expert witness Dr. Mindy Mechanic. (Doc. 106.) The government's expert notice indicates that Dr. Mechanic will testify "regarding the psychology of interpersonal victimization, including the dynamics of relationships

5

involving sexual abuse, and common behaviors exhibited by sexual abuse victims." (Doc. 106-1 at 2.) More specifically, the notice states that Dr. Mechanic may testify as to: (1) "how victims experience and process sexual abuse, including feelings of shame and denial"; (2) "how victims act based on their psychological responses to sexual abuse (as relevant in this case, these may include dissociation, freezing during an offense, feigning or claiming sleep, failing to report abuse or delaying or partially reporting abuse, continuing to maintain a friendship or living arrangement with an abuser)"; and (3) "how the dynamics of male-on-male sexual abuse can influence victim thought and behavior." (*Id*) The government also states that Dr. Mechanic may testify "that those who have suffered a previous incident of sexual abuse are at a higher risk for further sexual abuse." (*Id*.) Finally, the government states that Dr. Mechanic may testify "that sexual abuse victims sometimes experience physical arousal during sexual abuse and may explain how these physical reactions interact with the victim's psychological processes." (*Id*. at 3.)

Plaintiff argues that the Court should exclude Dr. Mechanic's testimony because (1) she is not properly qualified and (2) the proposed testimony will not aid the jury.

### i. *General Expert Witness Standard*

Under the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Such expert testimony is permissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help
> the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of
> the case.

Fed. R. Evid. 702. The District Court has the "'special obligation' to determine the relevance and reliability of an expert's testimony . . . to ensure accurate and unbiased decision-making by the trier of fact." *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1063 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003).

6

### ii.      Witness Qualification Challenge

Defendant bases his critique of Dr. Mechanic's qualifications on the fact that the focus of her work and expertise concerns intimate partner abuse. (Doc. 106 at 5 (citing Doc. 106-2).) Defendant correctly points out that Dr. Mechanic's dissertation was on battered woman syndrome; nearly all her grant work has related to the subject of intimate partner abuse or violence; and most of her publications have addressed that subject. (*Id.*) Defendant argues that because Defendant and the alleged victim were not in a romantic relationship at the time of the alleged sexual abuse, the dynamics of their relationship are "far different than those of intimate partners" and therefore that "it is not clear" whether Dr. Mechanic has sufficient expertise to address the circumstances of this case. (Doc. 106 at 5.)

In opposition, the government provides a supplemental proffer from Dr. Mechanic about her expected testimony. That proffer indicates that while Dr. Mechanic may have particularly well-developed expertise related to intimate partner violence, the breadth of her expertise encompasses other forms of sexual violence, including those at issue in this case. (*See* Doc. 110-2 (explaining that her expertise extends to "sexual assault, intimate partner abuse/violence, and staking").) Dr. Mechanic asserts that "[she has] testified in 68 cases involving adult sexual assault and consulted in numerous others either in my role as a forensic evaluator, as in personal injury litigation or as a consultant during military courts-martials (i.e., criminal prosecutions) for sexual assault. These adult sexual assault cases include sexual assaults committed by male perpetrators against adult male victims." (Doc. 110-2 at 2.) She reports that there is significant misinformation about how female sexual abuse victims act and even more misinformation about how male victims react. (*Id.*) Of note here, she indicates that many people believe that a man who becomes erect and or who ejaculates cannot be a victim of the crime. (*Id.* at 3.) The Court concludes that, as a general matter, Dr. Mechanic possesses expertise that is relevant to the circumstances of this case.

### iii.      Opinions Challenged as Unhelpful to the Jury

Defendant next argues that Dr. Mechanic's testimony will not aid the jury. (Doc. 106 at 3.) The "central concern" of Rule 702 is whether expert testimony "is helpful to the jury." *Mukhtar*, 299 F.3d at 1063 & n. 7. In general, to be admissible as helpful to the jury, "the expert testimony must address an

issue beyond the common knowledge of the average layman." *Id.* at 1066 n. 9; *see also Moses v. Payne*, 543 F.3d 1090, 1101 (9th Cir. 2008) ("Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading."). However, the Ninth Circuit indicated courts "must be cautious not to overstate the scope of the average juror's common understanding and knowledge." *United States v. Finley*, 301 F.3d 1000, 1013 (9th Cir. 2002).

Defendant generally contends that Dr. Mechanic's proposed testimony appears "to be largely within the common knowledge of the average layperson." (Doc. 106 at 5.) For example, he contends "[t]hat sexual abuse victims experience shame and denial and that they may freeze or dissociate during sexual abuse is generally understood." (*Id.*) Defendant further points out that "S.K. will be able to testify as to his thought process and the reasons for his delay in reporting the abuse." (*Id.*) The Court is not convinced. Dr. Mechanic's supplemental proffer compellingly articulates why numerous, relevant misconceptions remain common. (*See generally* Doc. 110-2.) Many courts have in fact held that such testimony helps counter "widely held misconceptions" on related subjects. *See United States v. Lopez*, 913 F.3d 807, 823 (9th Cir. 2019) (discussing battered woman syndrome). To the extent Defendant is advancing a general attack on all of Dr. Mechanic's testimony as unhelpful, the Court is not convinced. Defendant's more specific challenges to categories of proposed testimony by Dr. Mechanic warrant further consideration and are discussed in turn.

     a. <u>Testimony about "victim blaming."</u>

Defendant first objects to any testimony by Dr. Mechanic about "sexual assault victim-blame." (Doc. 110-2 at 5.) This topic is discussed in Dr. Mechanic's supplemental proffer as follows:

> Extensive research documents the extent of victim blame targeted towards female sexual assault survivors (e.g., Turchik, Dardis, Reynolds & Gidycz, 2011; Rich & Seffrin, 2012; Ryan, 2011). However, as described above, due to stereotypes of masculinity that are rooted in strength, power, dominance and sexuality, views of women as the ideal victims, and homophobia, when men are victims of rape or sexual assault, they are even more likely to be blamed, compared to female victims (Davies et al., 2001). In one study, male victims were blamed more for their sexual assault when they did not forcefully resist the assault or fight back (Davies et al., 2008).
>
> Because men are physically larger than women, and more experienced using physical force, male sexual assault victims are expected to fight off an attacker, and [are] held accountable when they fail to do so. Moreover,

> because of prevailing masculine gender role ideology and stereotypes men who are rape/sexually assaulted garner less sympathy than their female counterparts (Graham, 2006).

(*Id.*) At the hearing, Defendant objected to any such testimony on the ground that assignment of blame is not relevant to determining whether an assault occurred in this case. *See also People v. Alexander*, No. H045599, 2020 WL 2188866, at *14 (Cal. Ct. App. May 6, 2020) (finding irrelevant Dr. Mechanic's specific testimony in that case about victim blaming because it did not explain the victim's behavior and was not relevant to the victim's credibility). The government responded by conceding that it only intends to elicit testimony about this subject in a very general sense to establish the prevalence of misconceptions in society. The Court therefore finds this aspect of Defendant's motion is mooted by the government's agreement to significantly narrow the potential scope of testimony on this subject.

b. <u>Testimony about past victims of sexual abuse being more likely to experience subsequent abuse.</u>

Defendant next objects to allowing Dr. Mechanic's testimony that "those who have suffered a previous incident of sexual abuse are at a higher risk for further sexual abuse." (Doc. 106 at 5; *see also* Doc. 106-1 at 2; Doc. 110-2 at 12.) Defendant contends that this testimony is not relevant because it does not make it more or less probable that Defendant committed the offenses charged in this case. (Doc. 106 at 5 (citing Fed. R. Evid. 402).) Moreover, Defendant argues such testimony would be unduly prejudicial under Federal Rule of Evidence 403 because evidence of this nature would merely elicit sympathy for the alleged victim in this case. (*Id.*)

The government responds in its opposition that this evidence is admissible "so long as Dr. Mechanic's testimony remains focused on the aspects of victim psychology that put them at risk for such encounters, and not on whether S.K. suffered any prior abuse or whether (if so) he was more likely to have been assaulted in this case." (Doc. 110 at n. 4.) The government cites no authority for this proposition and, more importantly, fails to explain why evidence regarding "victim psychology that put them at risk for such encounters" is relevant.

At the hearing, the government explained that it anticipates eliciting evidence that S.K. and Defendant had a conversation after the alleged assault took place. At some point during this

conversation, S.K. became angry and mentioned that he was sexually victimized as a child. The government indicates that it does not intend to present evidence that S.K. actually was victimized as a child; rather, the evidence will show simply that S.K. thought or at least claimed to have been sexually victimized as a child. This clarification likewise fails to cogently explain the relevance of Dr. Mechanic's proposed testimony about previous victims being at higher risk of subsequent victimization.

However, the government also mentioned—somewhat in passing—that the evidence may show S.K. did not forcefully resist the alleged sexual assault. The government appears to be suggesting that the nature of S.K.'s response could have been linked to his past victimization and that Dr. Mechanic will have relevant expert testimony to offer on the connection between a previous sexual assault and a victim's response to a subsequent assault. Similar testimony by Dr. Mechanic was permitted in *Alexander*, as "relevant to dispel misconceptions about why victim did not fight back . . . or flee or call for help when [they] had the opportunity to do so." 2020 WL 2188866, at *11. It is not possible to definitively determine on the present record whether Dr. Mechanic's planned testimony on this subject will be relevant. The Court therefore defers ruling on this aspect of Defendant's motion. The parties are directed to bring up this issue with the Court outside the presence of the jury before Dr. Mechanic is questioned about this subject.

      c.  Testimony about the neurobiology of trauma.

Finally, Defendant objects to Dr. Mechanic offering testimony about the neurobiology of trauma. In her supplemental proffer, Dr. Mechanic explains that she may testify, generally, about how, in the "face of a perceived threat and danger," the part of the brain responsible for survival—the "limbic system"—is activated and results in a cascade of hormonal activity that "arm[s]" the body for to "fight or flee" in various ways and with various consequences, including the possibility that a "freeze response" might be exhibited as the last in a line of automatic defense mechanisms. (Doc. 110-2 at 7–8.) In addition, she may testify about how activation of the limbic system during trauma affects the "encoding, storage, and retrieval of memories for the period of time preceding, during, and after a traumatic incident." (*Id*. at 8.) Finally, she may testify that, during a traumatic event "some individuals dissociate (i.e., [experience] altered awareness in one's sense of time, person, or place), as a survival

10

mechanism." (*Id*.)

Defendant objects to generic testimony about the neurobiology of trauma, citing to *Alexander*, 2020 WL 2188866. There, the California Court of Appeal found that Dr. Mechanic's testimony generally describing "the reaction of victims to trauma" and generally explaining the "fight, flight, and freeze" responses to traumatic events were not beyond a layperson's common experience and therefore should not have been admitted. *Id*. at *13. At the hearing, the government did not disagree with this reading of *Alexander* nor with the conclusion that generic testimony on the reactions of trauma victims is generally not admissible. Instead, the government pointed to a related category of evidence Dr. Mechanic plans to offer on how trauma can impact the encoding of memories and/or cause a victim to disassociate from the traumatic event. The government contends that these concepts are not within the common experience of the average juror.

*Alexander* supports the government's position. The prosecution in *Alexander* requested and obtained permission to elicit testimony from Dr. Mechanic about the effects of psychological trauma on the formation of memory, such as the tendency to recount what happened in a disorganized or non-linear way. *Id*. at **7, 9. In addition, the trial court granted the prosecution's request to present expert testimony about how it is "common" for childhood sexual assault victims to "disassociate" and be unaware of their surroundings during a subsequent assault in adulthood. *Id*. at 8. The California Court of Appeals specifically approved of the admission of evidence falling within these categories. *Id.* at **11, 13 (finding relevant Dr. Mechanic's testimony about how sexual assault victims may give partial or confused disclosures of the alleged offense or may disassociate.) The Court tentatively concludes that Dr. Mechanic's testimony may be helpful to the jury on these subjects, assuming it is relevant considering the facts of the case. For example, if it is her opinion that only childhood sexual assault victims tend to disassociate, then the foundation may not be present to render such testimony relevant in this case. In addition, to the extent some general testimony about the neurobiology of trauma is needed for Dr. Mechanic to explain her more specific opinions, such testimony may be relevant if limited to necessary, foundational topics. Again, the Court defers a final decision on relevance until the record is more developed.

///

**C.     Government's Motion for Pre-Admission of Defendant's Statement and Permission to Use that Statement in Opening (Doc. 104).**

Law enforcement interviewed Defendant on June 12, 2019. (Doc. 59 at 2.) The interview was audio- and video-recorded. (Doc. 104 at 1.) Transcripts of the interviews were prepared and disclosed in discovery. (*Id*.) In preparation for trial, the government indicates that it informed defense counsel that it would seek to pre-admit its exhibits, including certain sections of the recorded interviews, and would seek to use one or more such interview portions in its opening statement. (*Id*.) According to the government, Defense counsel did not generally object to admission of portions of the interview but refused to agree that the government could use any such exhibits in its opening statement. (*Id*.) The government now seeks permission to both pre-admit a particular statement and present a brief video (less than thirty seconds) from Defendant's second interview during its opening statement. (*Id*. at 2.)

In opposition, Defendant indicates that he objects to admission of the video of Defendant's second interview on the ground that it contains "other act" evidence that should be excluded for reasons set forth in Defendant's separate motion in limine. (Doc. 109 at 2.) The Court addressed and rejected that argument above. Nonetheless, because the Court cannot rule out the possibility that the factual backdrop could change, the Court believes preadmission is inappropriate.

Even if the evidence could be pre-admitted, Defendant objects to the use of the video during opening statements. (Doc. 109 at 3–4.) As reflected in the transcript from that video excerpt, the following exchange occurred:

> SA Tucker: But you knew that, you know, prior to givin' him a blowjob, you didn't have permission, right?
>
> Racion: Yeah, yeah. Sorry.
>
> SA Tucker: And – and – it's okay. And then, you know, in – in uh, in the past couple months you've known based off of you trying to – you know, sexual advances towards him that it wasn't okay, right?
>
> Racion: Yeah. Yeah, sorry.

(*Id*. (citing Record at RACION_000529, at approximately 4:14)).

As part of its opening statement, the government intends to advise the jury that the evidence in this case will include the defendant's audio- and video-recorded statements that he performed oral sex on S.K. and knew that he did not have permission to do so. (*Id*. at 3.) The government proposes to play

12

the described video excerpt to "make concrete its general comments about the evidence." (*Id.*) The government maintains that the recordings themselves are admissible and should be pre-admitted, so comment on them is permissible during opening statement. (*Id.*)

Although the government is correct that the Court has discretion to manage opening statements, *see United States v. Cramer*, 126 Fed. App'x 841, 843 (9th Cir. 2005), the government presents scant authority for the proposition that it is appropriate to play video evidence in an opening statement. The closest citation provided is an unpublished Eighth Circuit decision that found it was not an abuse of discretion for the trial court to play audio clips from eight recorded phone calls, all of which were eventually admitted into evidence. *United States v. Bush*, 741 Fed. App'x 110, 117-18 (3d Cir. 2018). However, the undersigned has expressed concern over this practice as applied to video evidence specifically. *See Carpenter v. Forest Meadows Owners Ass'n*, No. 1:09-CV-01918-JLT, 2011 WL 3207778, at *6–7 (E.D. Cal. July 27, 2011). Even if the video evidence is pre-admitted, allowing it to be played in opening statement would mean that the video can be shown three times (once in opening, at least once during trial, and again during closing). This can "exalt the relevance" of the videotaped evidence over other forms of evidence. (*Id.* at *6 (internal quotation and citation omitted).) This appears to be a concern of relevance in the present case. Defendant indicates in his opposition that the context of his statement to law enforcement will be a key issue at trial because the circumstances of the statement are contested. (Doc. 109 at 4.) The Court will therefore exercise its discretion to deny the motion without prejudice.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. Defendant's motion to exclude "other acts" evidence and related statements by Defendant (Doc. 105) is DENIED.
2. Defendant's motion to preclude the testimony of Dr. Mindy Mechanic (Doc. 106) is DENIED.

///

///

///

3. The government's motion (Doc. 104) to preadmit the video of Defendant's confession on June 12, 2019 and present that video during opening statements is DENIED.

IT IS SO ORDERED.

Dated:  **August 29, 2022**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE